**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CATARINO MANUEL PEREZ, *on behalf of himself, FLSA Collective Plaintiffs and the Class,*

Plaintiff,

v.

86/2 RESTAURANT LLC
d/b/a GRACIE'S DINER,
SAS RESTAURANTS LLC
d/b/a TIMES SQUARE DINER & GRILL,
ANASTASIOS KATSAROS,
STEPHEN KATSAROS
a/k/a STEVEN KATSAROS,
GEORGIOS KANTARIS,
and STAVROS NIKOLAKAKOS,

Defendants.

Case No.: 25-cv-10248

**SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**
Jury Trial Demanded

Plaintiff, CATARINO MANUEL PEREZ ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Second Amended Class and Collective Action Complaint against Defendants, 86/2 RESTAURANT LLC d/b/a GRACIE'S DINER, SAS RESTAURANTS LLC d/b/a TIMES SQUARE DINER & GRILL, (the "Corporate Defendants"), ANASTASIOS KATSAROS, STEPHEN KATSAROS a/k/a STEVEN

KATSAROS, GEORGIOS KANTARIS and STAVROS NIKOLAKAKOS (the "Individual Defendants" and together with the Corporate Defendants, the "Defendants") and states as follows:

**INTRODUCTION**

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid overtime premiums due to unlawful straight rate compensation, (2) liquidated damages, and (3) attorneys' fees and costs.

2. Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid overtime premiums due to unlawful straight rate compensation, (2) unpaid call-in pay premiums, (3) unpaid spread of hours premiums, (4) liquidated damages, (5) statutory penalties due to WTPA violations, and (6) attorneys' fees and costs.

3. Plaintiff further alleges that, pursuant to Internal Revenue Code, 26 U.S.C. § 7434, he and others similarly situated are entitled to damages and fees and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

4. Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members as required by the Federal Insurance Contribution Act ("FICA"). Plaintiff also alleges that, in retaining those sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

7. For all relevant periods, Plaintiff CATARINO MANUEL PEREZ was a resident of New York County, New York.

8. Individual Defendants own and operate a restaurant enterprise, comprised of two (2) locations in New York that have been under the following trade names:

a. Times Square Diner & Grill, 807 8th Ave, New York, NY 10019;

b. Gracie's Diner, 1633 2nd Ave, New York, NY 10028;

(collectively, the "Diners")

9. All the Diners are operated as a single integrated enterprise under the common control of the Individual Defendants. Specifically, the Diners have "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Rahman v. Limani 51, LLC*, 2022 U.S. Dist. LEXIS 157705, *13 (S.D.N.Y. Aug. 31, 2022) (quoting *Griffin v. Sirva Inc.*, 835 F.3d 283, 293 (2d Cir. 2016)):

***Common Ownership or Financial Control***

All three Corporate Defendants are commonly owned by Individual Defendants:

a. The liquor licenses provided by the New York State Liquor Authority for 86/2 RESTAURANT LLC and SAS RESTAURANTS LLC list Individual Defendants ANASTASIOS KATSAROS, STEPHEN KATSAROS and STAVROS

NIKOLAKAKOS a/k/a STEVE NIKOLAKAKOS as the "principals" of their Diners. *See* **Exhibit A**.

b. On the liquor license stipulations application for Manhattan Community Board 4, Individual Defendant STEPHEN KATSAROS identifies himself as the owner of the Diners. *See* **Exhibit B**.

c. The New York City Department of Health and Mental Hygiene lists Individual Defendant ANASTASIOS KATSAROS as the owner of 86/2 RESTAURANT LLC. *See* **Exhibit C**.

d. In *Peralta v. 86/2 Restaurant LLC*, No. 1:25-cv-04241 (S.D.N.Y. filed May 21, 2025), individual defendants Anastasios Katsaros and Stavros Nikolakakos admitted in their Answer that they are the owners of the corporate defendant, 86/2 Restaurant LLC. *See* **Exhibit D** ¶ 20, 21, 28 and 29.

***Centralized Control of Labor Relations***

a. Employees were concurrently employed by the Diners, with Defendants transferring employees from one Diner to another on an as-needed basis. Specifically, Plaintiff heard conversations almost every week concerning other employees covering shifts at Defendants' Gracie's Diner location.

b. Attached hereto as **Exhibit E** is a screenshot of Javier Alonso Olan Vazquez's Facebook page, which indicates that he was employed at both Diners. The same screenshot was submitted as an exhibit to the complaint in *Maricela Mayoral v. Sas Restaurants LLC et al.*, No. 161083/2018.

c. Corporate Defendants' centralized control of labor relations is evidenced by the fact that the functions and responsibilities ordinarily associated with human

resources and payroll administration for both diner locations were performed, directed, and controlled by Individual Defendants. Individual Defendants exercised centralized authority over personnel matters, including, but not limited to, employee hiring, compensation, payroll processing, scheduling, and other employment-related policies and practices applicable to employees at both diners.

***Common Management***

All Diners are under the common management of Corporate and Individual Defendants:

a. Individual Defendants ANASTASIOS KATSAROS, STEPHEN KATSAROS, GEORGIOS KANTARIS and STAVROS NIKOLAKAKOS operate the totality of the Diners.

b. Moreover, Individual Defendants themselves shared direct supervision and control over the work of the diners' employees. Specifically, in the liquor license application Anastasios Katsaros identified his position as "Night Manager" and Steve Nikolakakos (a/k/a Stavros Nikolakakos) identified his position as "Afternoon Manager" at Times Square Diner. Attached hereto as **Exhibit F** is the personal questionnaire section of the liquor license application for Times Square Diner filed with the New York State Liquor Authority ("NYSLA"), which was attached to the complaint in *Maricela Mayoral v. Sas Restaurants LLC et al*, No. 161083/2018.

c. ANASTASIOS KATSAROS, STEPHEN KATSAROS and STAVROS NIKOLAKAKOS a/k/a STEVE NIKOLAKAKOS are liquor license holders for the Diners. *See* **Exhibit A**.

d. Pursuant to the New York State Liquor Authority Handbook for Retail Liquor Licensees, New York State liquor license holders must (1) prevent sales of liquor to minors, (2) prevent disorder, (3) confine service and consumption of liquor to the licensed area, (4) prevent sales of liquor to visibly intoxicated persons, (5) prohibit their businesses from offering unlimited drink specials, (6) ensure licensed restaurants have suitable kitchen facilities to prepare and serve a full menu whenever their business is open, (7) prevent individuals from appearing nude or partially nude on the licensed premises, (8) prevent the premixing of liquor, (9) prevent the refilling of liquor, (10) prevent possession of untaxed cigarettes & tobacco products, (11) prevent contamination of bottles, (12) maintain adequate books and records of all transactions involving the licensed business, (13) ensure proper identification of all beer taps, (14) ensure compliance with all stipulations and conditions of the liquor license agreement, (15) comply with all state and local laws and regulations governing the operations of the licensed business. *See* **Exhibit G**. Because Individual Defendants ANASTASIOS KATSAROS and STEPHEN KATSAROS are the liquor licensees for both Diners, Individual Defendants Individual Defendants ANASTASIOS KATSAROS and STEPHEN KATSAROS are required by New York State law to personally ensure all the Diners comply with the above 15 requirements.

e. As the common liquor licensees for all the Diners, Individual Defendants ANASTASIOS KATSAROS and STEPHEN KATSAROS are required by New York State law to (i) personally impose a common management and common control of labor relations upon the Diners, and (ii) comply with all state and local

laws, including the New York Labor Law, New York State Human Rights Law, and the New York City Human Rights Law. Failure to do so would be in violation of the provisions of the New York State Alcoholic Beverage Control Law which could result in disciplinary action by the New York State Liquor Authority, including arrest or fines. *See* **Exhibit G**; *see also* Chapter 478 of the Laws of 1934.

***Interrelation of Operations***

a. Defendants are engaged in the same business of operating classic American, casual restaurants serving inexpensive comfort food with extensive menus in New York City.

b. Whether Plaintiff personally ever worked anywhere other than Times Square Diner & Grill is irrelevant on the single integrated enterprise theory. What matters is Corporate Defendants' integration, not whether each component of the single integrated enterprise exercised direct control over Plaintiff or other employees. And these, as shown above, indicate that the Diners have profoundly interrelated operations. *See Kew Sing Yap v. Mooncake Foods, Inc*., 146 F. Supp. 3d 552, 557 (S.D.N.Y. 2015) (finding that plaintiffs had adequately alleged that four restaurant-defendants constituted a single integrated enterprise notwithstanding two defendants' argument that "they are distinct corporate entities for whom neither Plaintiff ever worked"); *Rahman v. Limani 51, LLC,* 2022 U.S. Dist. LEXIS 157705, *15 (S.D.N.Y. Aug. 31, 2022) (finding that Limani 51 and Estiatorio Limani constituted a single integrated enterprise despite plaintiff only working at Limani 51); *Ajala v. Limani 51,* 2024 NY Slip Op 34444(U), ¶ 6 (Sup. Ct. NY Cty. Dec. 17, 2024) (denying defendants' motion to dismiss single integrated enterprise

allegations against five corporate entities even though plaintiff had been directly employed and controlled by only one of them). Diners whose operations were not interrelated would not, out of mere goodwill, direct their managers to devote time to bringing cooking and management expertise to rival restaurants competing for the niche market of American diners. That is why "[e]ntities which provide mutually supportive services to the substantial advantage of each entity are operationally interdependent and may be treated as a single enterprise under the [Fair Labor Standards] Act." *Archie v. Grand Cent. P'ship*, 997 F. Supp. 504, 525 (S.D.N.Y. 1998).

10. All Corporate Defendants are appropriately named in this action because the Diners share identical illegal wage and hour policies and are under common ownership, management and control. The Diners and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the FLSA Collective Plaintiffs and Class Members for whom Plaintiff seeks to represent.

11. Corporate Defendant, 86/2 RESTAURANT LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and an address for service of process at 1633 2nd Avenue, New York, NY, 10028.

12. Corporate Defendant, SAS RESTAURANTS LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and an address for service of process at 807 8th Ave, New York, NY 10019.

13. Individual Defendant ANASTASIOS KATSAROS is an owner and principal of all Corporate Defendants. Individual Defendant ANASTASIOS KATSAROS exercises operational control as it relates to all employees including Plaintiff. Individual Defendant ANASTASIOS

KATSAROS exercises the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff. At all times, employees of Defendants' Diners could complain to Individual Defendant ANASTASIOS KATSAROS directly regarding any of the terms of their employment, and Individual Defendant ANASTASIOS KATSAROS would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. Individual Defendant ANASTASIOS KATSAROS exercises functional control over the business and financial operations of each of the Corporate Defendants.

14. Individual Defendant STEPHEN KATSAROS a/k/a STEVEN KATSAROS is an owner and principal of all Corporate Defendants. Individual Defendant STEPHEN KATSAROS exercises operational control as it relates to all employees including Plaintiff. Individual Defendant STEPHEN KATSAROS exercises the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff. At all times, employees of Defendants' Diners could complain to Individual Defendant STEPHEN KATSAROS directly regarding any of the terms of their employment, and Individual Defendant STEPHEN KATSAROS would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. Individual Defendant STEPHEN KATSAROS exercises functional control over the business and financial operations of each of the Corporate Defendants.

15. Individual Defendant STAVROS NIKOLAKAKOS is an owner and principal of all Corporate Defendants. Individual Defendant STAVROS NIKOLAKAKOS exercises

operational control as it relates to all employees including Plaintiff. Individual Defendant STAVROS NIKOLAKAKOS exercises the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff. At all times, employees of Defendants' Diners could complain to Individual Defendant STAVROS NIKOLAKAKOS directly regarding any of the terms of their employment, and Individual Defendant STAVROS NIKOLAKAKOS would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. Individual Defendant STAVROS NIKOLAKAKOS exercises functional control over the business and financial operations of each of the Corporate Defendants.

16. Individual Defendant GEORGIOS KANTARIS is an owner and principal of all Corporate Defendants. Individual Defendant GEORGIOS KANTARIS exercises operational control as it relates to all employees including Plaintiff. Individual Defendant GEORGIOS KANTARIS exercises the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff. At all times, employees of Defendants' Diners could complain to Individual Defendant GEORGIOS KANTARIS directly regarding any of the terms of their employment, and Individual Defendant GEORGIOS KANTARIS would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. Individual Defendant GEORGIOS KANTARIS exercises functional control over the business and financial operations of each of the Corporate Defendants.

17. At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

18. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

19. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

20. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt, front-of-house and back-of-house employees (including servers, waiters, bussers, bartenders, food runners, hostesses, counterpersons, delivery persons, chefs, cooks, line-cooks, food preparers, cashiers, porters, and dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

21. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper overtime premiums due to straight rate compensation. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

22. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action,

their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

23. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt, front-of-house and back-of-house employees (including servers, waiters, bussers, bartenders, food runners, hostesses, counterpersons, delivery persons, chefs, cooks, line-cooks, food preparers, cashiers, porters, and dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

24. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

25. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

26. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices

by Defendants, as alleged herein, of Defendants' failure to pay all wages, including overtime wages and premiums, due to: (1) unlawful straight rate compensation, (2) failing to pay call-in pay premiums, (3) failing to pay spread of hours premiums, (4) failing to provide proper wage and hour statements, per requirements of the New York Labor Law, and (5) failing to provide proper tax information to the IRS. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures of Defendants.

27. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

28. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great

expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and Class Members within the meaning of the New York Labor Law;

b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

e) Whether Defendants paid Plaintiff and Class Members for all hours they worked;

f) Whether Defendants paid Plaintiff and Class Members overtime premiums for all overtime hours they worked;

g) Whether Defendants properly compensated Plaintiff and Class Members with their call-in premiums;

h) Whether Defendants paid employees their owed spread of hours premiums; and

i) Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law.

## STATEMENT OF FACTS

*Plaintiff's Employment Background*

31. In or around June 2021, Plaintiff was hired by Defendants to work as a dishwasher at Defendants' Times Square Diner & Grill. Approximately three months later, Plaintiff was promoted to a food preparation position, and approximately six months thereafter, he was promoted to the position of cook. Plaintiff's employment with Defendants ended in or around July 2025.

32. From the start of his employment through April 2022, Plaintiff was scheduled by Defendants to work eight (8) hours per day, from approximately 3:00 p.m. to 11:00 p.m., six (6) days per week. As a result, Plaintiff worked approximately forty-eight (48) hours per week. From April 2022 until June 2024, Plaintiff worked eight (8) hours per day, from 3:00 p.m. to 11:00 p.m., four (4) days per week, resulting in a total of thirty-two (32) hours per week. From June 2024 until

his termination, Plaintiff worked eight (8) hours per day, from 3:00 p.m. to 11:00 p.m., six (6) days per week, resulting in a total of forty-eight (48) hours per week.

33. Throughout his employment, Defendants paid Plaintiff by check for forty (40) hours per week at the prevailing minimum wage and paid his additional hours worked in excess of forty (40) per week in cash at the same straight-time minimum wage rate per hour, rather than at the legally required overtime rate of one and one-half times his regular hourly rate.

*Claims of Unpaid Overtime Premiums due to Unlawful Straight Rate Compensation*

34. At all relevant times, Defendants failed to pay any overtime premiums to Plaintiff, FLSA Collective Plaintiffs, and Class Members, for all hours they worked over 40 hours per workweek, due to a policy of unlawful straight rate compensation, in violation of the FLSA and the NYLL.

35. At all relevant times, Defendants compensated Plaintiff at a straight minimum wage rate for all hours worked, including all of Plaintiff's overtime hours worked. As a result, Plaintiff's overtime hours were compensated at the same regular rate as his regular hours, instead of 1.50 times his regular rate. *See* **Exhibit H.**

36. At all relevant times, Defendants similarly compensated FLSA Collective Plaintiffs and Class Members at straight hourly rates and failed to compensate them any overtime premiums for all their hours worked over 40 hours per workweek.

37. Defendants knowingly and willfully operated their business with a policy of not compensating overtime premiums to Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

*Claims of Unpaid Wages due to Unpaid Call-in Pay Premiums*

38. Throughout his employment, Plaintiff would occasionally be informed that he was not needed that day and sent home upon arriving to work, despite reporting to work as scheduled. However, Defendants would not provide Plaintiff with his call-in pay premiums. Class Members would similarly be sent home from their scheduled shifts due to discordant scheduling system Defendants followed, and not be provided their call-in pay premiums.

39. For example, on March 7, 2022, Plaintiff clocked in at 3:03 p.m. and clocked out later that same minute; however, Defendants' records reflect no recorded work time for Plaintiff on that date. Plaintiff was not provided with any call-in premium payment for that day. *See* **Exhibit I.**

40. Defendants knowingly and willfully operated their business with a policy of not paying call-in pay premiums to Plaintiff and Class Members, in violation of the NYLL.

*Claims of Unpaid Spread of Hours Premiums*

41. At all relevant times, Defendants failed to compensate spread of hours premiums to Plaintiff and Class Members for all days they worked with a spread of ten (10) or more hours, in violation of the NYLL.

42. Throughout his employment, Plaintiff was occasionally required to work days with a spread of hours greater than ten (10), usually when he worked a double shift. Class Members were similarly required by Defendants to work days with a spread of ten (10) or more hours.

43. However, Defendants failed to pay Plaintiff and Class Members their owed spread of hours premiums for every workday lasting more than ten (10) hours.

44. For example, on two occasions in the same month, March 17 and March 24, 2022, Plaintiff's time records reflect that he worked more than 10 hours in a single day, yet he was not paid the spread of hours premiums on either occasion. *See* **Exhibit I.**

45. Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff and Class Members their properly owed spread of hours premiums, in violation of the NYLL. Defendants' awareness and willfulness is apparent because Defendants regularly scheduled Plaintiff and Class Members to work shifts of ten (10) hours, and failed to compensate them with any spread of hours premiums.

*Fraudulent Filing, Breach of Contract and Unjust Enrichment Claims*

46. At all relevant times, Defendants intentionally and willfully subjected Plaintiff, FLSA Collective Plaintiffs, and Class Members to (i) a policy of filing fraudulent tax information on their behalf, in violation of FICA, and (ii) a policy of unjustly enriching themselves at the expense of Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of New York law and Internal Revenue Code.

47. At all relevant times, Plaintiff and Class Members were compensated by Defendants in both cash and checks. Defendants paid Plaintiff for forty (40) hours per week by check, while paying the remaining overtime hours in cash at a straight-time rate.

48. As a result of Defendants' paying Plaintiff and Class Members in cash and checks, Defendants failed to provide Plaintiff and Class Members with accurate IRS Forms W-2 for all the tax years of their employments and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff and Class Members. In failing to account for these monies in their IRS filings, Defendants filed fraudulent information in violation of 26 U.S.C. § 7434. Under 26 U.S.C.

§ 7434(b), Defendants are liable to Plaintiff and Class Members for at least five thousand dollars per each fraudulent filing, which would have to be at least once per year.

49. In violating the Internal Revenue Code by failing to provide proper W-2 forms, Defendants also breached their contracts with Plaintiff and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

50. Defendants also unjustly enriched themselves at the expense of Plaintiff and Class Members by retaining monies that should have been remitted to the IRS on Plaintiff's and Class Members' behalf.

51. As a result, Plaintiff and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

52. The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiffs and Class Members 7.65% of all their earnings from Defendants beginning six years prior to the filing of this Complaint.

53. Even if Defendants could show that they paid some employees a part of their wages in check and filed the appropriate W-2s for those checks, Defendants would remain liable to those employees for failing to pay FICA taxes on the cash portions of their wages.

*Claims of WTPA Violations*

54. At all relevant times, Defendants failed to provide accurate wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA"), incorporated into the NYLL.

55. In failing to provide accurate wage statements, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

56. New York courts continue to find sufficient standing to support these claims. One such court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

57. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez*. By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the

hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did not correspond to the hours the employee actually worked.

58. By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

59. Defendants knowingly and willfully operated their business with a policy and practice of failing to pay overtime premiums to Plaintiff and Class Members for all hours worked over forty.

60. Defendants knowingly and willfully operated their business with a policy and practice of failing to pay call-in pay premiums to Plaintiff and Class Members when they were required to report to work for scheduled shifts and were then sent home within the first hour of their shift, despite having appeared as scheduled and being available to work.

61. Defendants knowingly and willfully operated their business with a policy and practice of failing to pay spread of hours premiums to Plaintiff and Class Members for workdays with a spread of greater than ten hours.

62. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with accurate wage statements, in violation of the NYLL.

63. Defendants knowingly and willfully operated their business with a policy and practice of providing fraudulent tax information to the IRS regarding their employment of Plaintiff and Class Members.

64. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

65. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

66. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

67. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

68. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their properly owed overtime premiums for all hours worked over 40 hours per workweek, due to a policy of unlawful straight rate compensation.

69. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

70. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their overtime premiums, when Defendants knew or should have known such was due.

71. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

72. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

73. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid overtime wages and premiums, and liquidated damages.

74. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

75. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

76. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

77. Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them any overtime premiums due to a policy of unlawful straight rate compensation.

78. Defendants failed to compensate Plaintiff and Class Members with their call-in pay premiums, in direct violation of the NYLL.

79. Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them any spread of hour premiums for all their shifts worked in excess of ten (10) hours.

80. Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

81. Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

82. Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants: their unpaid overtime premiums, unpaid spread of hours premiums, unpaid call-in pay premiums, liquidated damages, statutory penalties, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law.

## COUNT III

## FRAUDULENT FILING OF INFORMATION RETURNS UNDER THE INTERNAL REVENUE CODE, 26 U.S.C. § 7434(a)

83. Plaintiff realleges and reavers all the foregoing allegations in this Complaint as if fully set forth herein.

84. Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

85. By failing to provide Plaintiff and Class Members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and Class Members as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

86. Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

87. Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

## COUNT IV

## BREACH OF CONTRACT

88. Plaintiff realleges and reavers all the foregoing allegations in this Complaint as if fully set forth herein.

89. "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002).

90. When Plaintiff and Class Members accepted offers of employment from Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class Members in accordance with all applicable laws. This involved, inter alia, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

91. Defendants breached this duty when they paid Plaintiff and Class Members partially in cash and failed to file proper W-2's. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

**COUNT V**

**UNJUST ENRICHMENT**

92. Plaintiff realleges and reavers all the foregoing allegations in this Complaint as if fully set forth herein.

93. To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

94. Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

95. Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid overtime premiums as a result of Defendants' unlawful straight rate compensation, due under the FLSA and the NYLL;

d. An award of unpaid call-in pay premiums, due under the NYLL;

e. An award of unpaid spread of hours premiums, due under the NYLL;

f. An award of statutory penalties as a result of Defendants' failure to comply with the New York Labor Law's wage statement requirements;

g. Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

h. Disgorgement from Defendants of all illegally retained sums that should have gone towards Plaintiff's and Class Members' FICA contributions;

i. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages and overtime premiums pursuant to 29 U.S.C. § 216;

j. An award of statutory damages to Plaintiff and each Class Member under 26 U.S.C. § 7434 for each violation;

k. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages and overtime premiums pursuant to the NYLL;

l. An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

m. Designation of this action as a collective action pursuant to 29 U.S.C. § 216(b);

n. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

o. Designation of this action as a class action pursuant to F.R.C.P. 23;

p. Designation of Plaintiff as Representative of the Class;

q. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: September 11, 2026
New York, New York

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

By: /s/ *C.K. Lee*
C.K. Lee, Esq. (CL 4086)